768 F.2d 932
 Louis INGLESE, Petitioner-Appellant,
v.
UNITED STATES PAROLE COMMISSION; Carol M. Pavilack,
Regional Commission North Central Region; and Thomas F.
Keohane, Jr., Warden, United States Penitentiary, Terre
Haute, Indiana, Respondents-Appellees.
 No. 84-2845.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1985.
Decided July 26, 1985.
 
 John L. Pollok, Hoffman, Pollok, Gasthalter, New York City, N.Y., for petitioner-appellant.
 Gerald A. Coraz, Asst. U.S. Atty., Indianapolis, Ind., for respondents-appellees.
 Before BAUER, CUDAHY, Circuit Judges, and FAIRCHILD, Senior Judge.
 BAUER, Circuit Judge.
 
 
 1
 Louis Inglese, a federal prisoner, claims in a petition for a writ of habeas corpus that the application to him of parole guidelines promulgated subsequent to the commission of his crime violates the ex post facto clauses of the United States Constitution. The district court in the Southern District of Indiana denied the petition, holding that parole guidelines are not "laws" within the meaning of the ex post facto clause and that therefore the prisoner's parole eligibility could be assessed under the 1983 Parole Guidelines, rather than the 1973 Guidelines whose use the prisoner urges. We affirm.I
 
 
 2
 In May 1974, Inglese was convicted of participation in a four year conspiracy to import illegally into the United States and distribute over three kilograms of heroin and approximately one kilogram of 100% pure cocaine. Inglese also was convicted of bribery of undercover narcotics officers, failure to file income tax returns, income tax evasion, and attempts to obstruct justice. In May 1974, Inglese was sentenced to an aggregate term of 56 and one-half years. Inglese presently is incarcerated in the United States Penitentiary in Terre Haute, Indiana.
 
 
 3
 The petitioner was afforded an initial parole hearing pursuant to 28 C.F.R. Sec. 2.12 on June 3, 1983, after serving 118 months of his sentence. On June 10, 1983, the parole hearing examiners referred the case to the Regional Parole Commissioner for original jurisdiction because the petitioner's sentence exceeded 45 years, and recommended that the petitioner be given presumptive parole after service of 150 months. On July 14, 1983 the Regional Parole Commission ordered that the petitioner's incarceration be continued to a presumptive parole release after service of 198 months. The Commission gave the following statement of its reasons for its decision:
 
 
 4
 Your offense behavior has been rated as Category Eight severity because it involved the distribution of more than three kilograms of 100% pure cocaine in which you had a managerial/proprietary interest; you attempted to bribe a public official; and you violated Internal Revenue laws. Your salient factor score is 4 (see attached sheet). You have been in custody a total of 119 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 150 plus months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision more than 48 months above the minimum is not found warranted.
 
 
 5
 In calculating Inglese's presumptive parole release date, the Parole Commission utilized the 1983 Guidelines for parole release, 28 C.F.R. Sec. 2.20 (1983), rather than the 1973 Guidelines applicable at the time of Inglese's conviction.
 
 
 6
 Inglese filed an administrative appeal of the initial parole hearing decision pursuant to 28 C.F.R. Sec. 2.27. The National Appeals Board (Full Commission) affirmed the Regional Commission's decision in petitioner's case on October 18, 1983. Inglese filed for a writ of habeas corpus on February 15, 1984 in the District Court for the Southern District of Indiana. After cross motions for summary judgment, the district court dismissed Inglese's petition and granted the Commission's motion for summary judgment. On October 25, 1984, Inglese appealed.
 
 II
 
 7
 The ex post facto prohibition of the U.S. Constitution, Art. I, Sec. 9, cl. 3, and Art. I, Sec. 10, cl. 1, forbids Congress and the states to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1867)). The ex post facto clauses serve two principal purposes: they curtail legislative abuses and support a right to fair notice of criminal laws and their punishments. Weaver, 450 U.S. at 29, 101 S.Ct. at 964; Warren v. United States Parole Commission, 659 F.2d 183, 187-88 (D.C.Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). In Weaver the Court explained that "two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective ... and it must disadvantage the offender affected by it." Weaver, 450 U.S. at 29, 101 S.Ct. at 964. What is left undefined by the Court, however, is what constitutes a "law" within the meaning of "ex post facto law."
 
 
 8
 The Third Circuit has held that "within the criminal sphere, the Supreme Court opted for a broad reading of the proscriptions." Geraghty v. United States Parole Commission, 579 F.2d 238, 264 (3d Cir.1978), vacated, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (ex post facto claims not reached). Following Geraghty, this circuit has held that regulations adopted by an agency pursuant to rule making authority delegated to it by Congress can "have the force and effect of law" in the context of the ex post facto prohibitions. Rodriguez v. United States Parole Commission, 594 F.2d 170, 173 (7th Cir.1979).
 
 
 9
 The Supreme Court has recognized some limitations, however, on the reach of the ex post facto prohibition. The provision was not intended "to limit the legislative control of remedies and modes of procedure which do not affect matters of substance ... [but] ... to secure substantial personal rights." Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). In this framework of case law, then, we look to see whether the application of 1983 rather than 1973 Guidelines to petitioner violated his constitutional right to be free of ex post facto laws.
 
 
 10
 The first criterion of "retrospectivity" is conceded: the 1983 Guidelines were not in force when petitioner committed his crimes, was convicted and sentenced. Their application to him, therefore, is retrospective.
 
 
 11
 As to the second criterion of "disadvantage," petitioner argues that the 1983 Guidelines are more onerous than the 1973 Guidelines, both on their face and in practical effect. The Guidelines both in 1973 and in 1983 follow a similar structure. Parole examiners use two sets of criteria to classify inmates on a Guideline data table. One set of criteria classifies a prisoner's offense into one of several "Offense Severity" categories. The other set of criteria, the "Salient Factor Score," attempts to evaluate the relationship between an individual offender's background and his likelihood of recidivism. This score then falls into one of the categories on the guidelines table. The ratings for these two criteria produce a recommended range of months for a prisoner's term before parole. 28 C.F.R. Sec. 2.20. See also Comment, Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation, 62 B.U.L.REV. 515, 519-20 (1982).
 
 
 12
 The parole examiners, utilizing the 1983 Guidelines, rated petitioner's offense severity as Category 8 and his salient factor score as 4. Under the Guideline data table, this combination yielded a "customary range" of time to be served of "150 +" months. Category 8 offenses have no specified upper limit "due to the extreme variability of the cases in this category." 28 C.F.R. Sec. 2.20 ("Guidelines for Decision-Making," n. 1). The examiners found that petitioner had served 119 months, and that "after a review of all relevant factors and information presented," a decision to release significantly below the minimum time recommended was not warranted.
 
 
 13
 Petitioner argues that under the 1973 Guidelines, his offense behavior would have been classified as "very high" severity, Category 5, and that he would have had a salient factor score of 5. This combination would have yielded a customary range of 45-55 months. Petitioner derives these assumptions from an analysis of the criteria as used under the 1973 Guidelines for calculating offense severity and salient factor score. Inglese argues therefore that he was disadvantaged by the use of the 1983 rather than the 1973 Guidelines. Were we persuaded that the parole guidelines were laws, and thus subject to the proscriptions of the ex post facto clause, we would be required to analyze carefully petitioner's claims to see if indeed the 1983 Guidelines are more onerous as applied to him than the 1973 Guidelines would have been. We need not, however, put ourselves in the shoes of the 1973 Parole Examiners in this case, for we hold that the parole guidelines are not "laws," and therefore can be applied ex post facto without violating petitioner's constitutional rights.
 
 
 14
 Federal law establishes the United States Parole Commission, sets out the statutory framework for parole decisions, 18 U.S.C. Secs. 4201-4218, and confers on the Commission the power to make guidelines. 18 U.S.C. Sec. 4203; 28 C.F.R. Secs. 2.01-2.63 (1985). A reading of the Commission's Parole Guidelines as a whole establishes that they were meant to be applied in a discretionary fashion: "[t]he granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission." 28 C.F.R. Sec. 2.18 (1985). The statement of general policy as to the guidelines indicates that their purpose was "[t]o establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without relinquishing individual case consideration." 28 C.F.R. Sec. 2.20(a) (1985). The Commission "may grant or deny release on parole notwithstanding the guidelines ... if it determines there is good cause for so doing." 18 U.S.C. Sec. 4206(c). The Commission's policy statement specifically provides that the guidelines are only a "customary range" for time served, 28 C.F.R. Sec. 2.20(b), and that these ranges are "merely guidelines. Where the circumstances warrant, decisions outside the guidelines (either above or below) may be rendered." 28 C.F.R. Sec. 2.20(c). Decisions outside the guidelines are subject to a stricter standard of review. See 28 C.F.R. Secs. 2.24-2.26. The policy statement provides that "mitigating or aggravating circumstances," or "clinical evaluation of risk" may give cause to override the guidelines. 28 C.F.R. Sec. 2.20(d), (e). Moreover, the range of materials the Commission may consider in making its parole decision is broad, see 18 U.S.C. Sec. 4207, 28 C.F.R. Sec. 2.19(a)-(d), and "[t]he Commission encourages the submission of relevant information concerning an eligible prisoner by interested persons." 28 C.F.R. Sec. 2.20(b). Finally, the policy statement provides that "[t]he Commission shall review the guidelines, including the salient factor score, periodically and may revise or modify them at any time as deemed appropriate." 28 C.F.R. Sec. 2.20(g).
 
 
 15
 The statute, the parole regulations, and the policy statements contained therein clearly and repeatedly emphasize the discretionary aspect of the decision-making process of parole, particularly in the use of the guidelines. While a heightened standard of review checks this discretion, the Commission's inherent ability to exercise discretion is not thereby altered. The power to exercise discretion indicates that the guidelines are merely guides, and not laws: guides may be discarded where circumstances require; laws may not. An application of the 1983 Guidelines to petitioner then, rather than the 1973 Guidelines, does not violate the ex post facto prohibition. Moreover, the 1973 Guidelines reserved the Commission's right to revise the guidelines, thereby giving petitioner fair warning when he was sentenced that the guidelines under which his parole release date would be determined would be subject to change. See Warren v. United States Parole Commission, 659 F.2d 183, 195-97 (D.C.Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982).
 
 
 16
 The principle that parole guidelines are not laws has been approved in a general and summary way by this circuit, see Zeidman v. United States Parole Comm'n, 593 F.2d 806, 807 (7th Cir.1979), and by the majority of other circuits which have considered the question. See, e.g., Dufresne v. Baer, 744 F.2d 1543 (11th Cir.1984); Roth v. United States Parole Commission, 724 F.2d 836, 837 (9th Cir.1984) (following Rifai v. United States Parole Comm'n, 586 F.2d 695 (9th Cir.1978); Warren v. United States Parole Comm'n, 659 F.2d 183 (D.C.Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); Ruip v. United States, 555 F.2d 1331 (6th Cir.1977). See also Portley v. Grossman, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980) (in chambers opinion of Justice Rehnquist denying a stay of execution of the Court of Appeals's judgment denying a habeas corpus writ, pending review on certiorari in the Supreme Court, and stating that federal parole guidelines "operate only to provide a framework for the Commission's exercise of its statutory discretion." Id. at 1312, 100 S.Ct. at 715); Hayward v. United States Parole Commission, 659 F.2d 857 (8th Cir.1981), cert. denied, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982) (where no guidelines were in effect at the time of the crime application of guidelines in effect at time of sentencing does not violate ex post facto); Shepard v. Taylor, 556 F.2d 648 (2d Cir.1977) (court notes in dicta that a change in guidelines does not violate the ex post facto prohibition in the context of a discussion of the application of the "severity of the offense" standard to a prisoner originally sentenced under the Youth Correction Act.).
 
 
 17
 Only the Third Circuit has held that parole guidelines, when applied inflexibly, can be laws subject to the ex post facto prohibition. United States ex rel. Forman v. McCall, 709 F.2d 852 (3d Cir.1983), affirming Geraghty v. United States Parole Commission, 579 F.2d 238 (3d Cir.1978), vacated and remanded on other grounds, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (Court expressly declined to reach merits of the ex post facto claim). The Third Circuit's principal rationale for holding that parole guidelines can be laws is its conclusion that the Parole Commission's discretion is "severely constricted," id. at 862, and that in the majority of cases, the Commission follows its guidelines. Quoting Geraghty, the court noted that "in 1975 prisoners were granted parole prior to their 'customary release dates' in only 8.7% of the cases. Another decision of this Court took judicial notice of estimates of compliance with the guidelines ranging from 88% to 94%." Id. at 861 (quoting Geraghty, 579 F.2d at 267). Therefore the court remanded the case to the district court to take evidence and quantify the Commission's exercise of its discretion.
 
 
 18
 Petitioner clings to these statistics and urges us to adopt the results of the investigation of the district court in the Forman remand, where the court concluded that 85-90% of all parole decisions fall within the parole guideline parameters. Forman v. McCall, No. 81-0053 (M.D.Pa. Sept. 14, 1984). Petitioner argues that, to accept the "outdated view" that guidelines are mere "guideposts," Zeidman, 593 F.2d at 808, in light of the fresh Forman findings, is "to assume the attitude of an ostrich with its head in the sand." Petitioner's Br. at 29. It is a myth, of course, that ostriches stick their heads in the sand in a transparently foolish attempt to avoid the unavoidable; in fact, they bury their heads to burrow for food. See Wall Street Journal, May 15, 1985, at 1, col. 4. So, too, shall we search for sustenance beneath the glossy statistical surface of petitioner's argument. Looking to the true nature and power of the Parole Commission as defined by Congress and its own guidelines, we conclude that the Commission's power to exercise discretion is more significant to our analysis here than is the frequency with which that power is exercised.
 
 
 19
 It is hardly surprising that the guidelines are followed 85% of the time; it is certainly not cause for alarm. Guidelines would not be very useful if they did not adequately serve their purpose in a sizable majority of cases. The Commission's power to revise the guidelines, pursuant to 28 C.F.R. Sec. 2.20(g), attests to the goal of keeping guidelines current and readily applicable to the contemporary trend of cases. Although this is not the case before us, it in fact would not matter to our analysis if the guidelines were followed in 100% of the cases. The key to the finding that guidelines are guides merely, and not laws, is that the Parole Commission has a congressional mandate, expressed both in the statute and the regulations, to exercise discretion. See 18 U.S.C. Sec. 4206(a)-(d) (1985); 28 C.F.R. Secs. 2.18-2.26 (1985). How often that discretion is exercised is immaterial. It is for this reason that it is unnecessary to remand this case for factual findings regarding the previous interpretation of or frequency of use of the guidelines. Compare Forman, 709 F.2d at 862; Geraghty, 579 F.2d at 267.
 
 
 20
 The Parole Commission's power to exercise discretion derives from its mandate to provide individualized assessment. 18 U.S.C. Secs. 4203-4206; 28 C.F.R. Sec. 2.20 (1985). Thus, even when parole release dates are set within the guidelines, discretion can be said to be at work. In Zeidman, this court found that the provision of individualized treatment indicated the flexibility of guidelines, a flexibility which is alien to law. Zeidman, 593 F.2d at 808. In Zeidman, we found individualized treatment where the Parole Commission referred to the guidelines, the institutional performance of the prisoner, and "all relevant factors and information presented" before denying the prisoner parole. Id. These same factors were considered by the Parole Commission in reviewing petitioner's request for parole. Thus we can conclude that the Parole Commission's decision was not a rote application of the guidelines, but an individualized assessment of the prisoner based on the evidence before the Commission. See also Newman, Parole Release Decisionmaking and the Sentencing Process, 84 YALE L.J. 810, 837 (1975) (noting that discretion can be at work even in the manipulation of the categories and salient factor scores).
 
 
 21
 The United States Supreme Court's recent decision in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), does not change our analysis. In Weaver, the Court held that a Florida statute repealing an earlier statute and reducing the amount of "gain time" for good conduct deducted from a prisoner's sentence violated the ex post facto prohibition when applied to a prisoner whose crime was committed before the new statute's enactment. Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). While petitioner argues that Weaver mandates a conclusion that the application of the 1983 Guidelines in this case violates the ex post facto prohibition, the two cases are clearly distinguishable.
 
 
 22
 In Weaver, the Florida statute provided for an automatic entitlement of prisoners to monthly gain time "simply for avoiding disciplinary infractions and performing [their] assigned tasks." Id. at 35, 101 S.Ct. at 968. The 1975 statute provided that the authorities "shall grant" five, ten, and fifteen days per month off the prisoner's first and second, third and fourth, and fifth and all following years respectively. The 1979 statute provided that the authorities "shall grant" three, six, and nine days for the same corresponding years. Id. at 26, 101 S.Ct. at 962. The Court held that this alteration in the expected gain time made the prisoner's punishment "more onerous" and offended the ex post facto prohibition.
 
 
 23
 In this case, however, no statute guaranteed a certain date for parole. The statutes and regulations make clear not only that parole is a discretionary decision, but that the guidelines of that discretion can be modified at any time by the Commission. 28 C.F.R. Sec. 2.20(g). When petitioner was sentenced he could have had no certainty in terms of his release date in the way that Weaver possessed a certainty that his sentence would be reduced by a methodical application of the good time statute. Petitioner knew only that, as part of his punishment, he would be at the mercy of the parole board. See Warren, 659 F.2d at 195.
 
 
 24
 While this assessment may seem harsh, it merely states the reality of the relationship between the sentencing and the parole decisions. In a case rejecting a federal prisoner's collateral attack on his original sentence under 28 U.S.C. Sec. 2255, the Supreme Court referred to the distinction between sentencing and parole decisions: "the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term." United States v. Addonizio, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979). The Court emphasized that the decision to parole, and hence expectations about parole lay elsewhere. "The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission.... The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission." Addonizio, 442 U.S. at 189, 99 S.Ct. at 2242. Justice Rehnquist, in an inchambers opinion, also addressed this relationship. "[A]t the time of his sentence [the prisoner] knew that parole violations would put him at risk of serving the balance of his sentence in federal custody. The guidelines therefore neither deprive applicant of any pre-existing right nor enhance the punishment imposed." Portley, 444 U.S. at 1312-13, 100 S.Ct. at 715 (Rehnquist, J., in chambers). The difference between parole and sentencing is similar to the difference between parole determinations and "gain time" accrual, as discussed in Weaver, and thus significantly distinguishes this case from Weaver.
 
 
 25
 This circuit recently has considered ex post facto claims regarding certain types of parole decisions in a line of cases from which this case must be distinguished. See, e.g., Prater v. United States Parole Commission, 764 F.2d 1230 (7th Cir.1985); Heirens v. Mizell, 729 F.2d 449 (7th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984); Welsh v. Mizell, 668 F.2d 328 (7th Cir.), cert. denied, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). Prater, Heirens, and Welsh all involved the question of whether "the introduction of an explicit general deterrence criterion into a parole scheme ostensibly guided solely by considerations of rehabilitation, risk of release to society and special deterrence ... operates as an ex post facto law in violation of the Constitution." Prater, at 1234. In Welsh this circuit held that introduction of a retributive general deterrent into the Illinois Parole statute operated as an ex post facto law. Welsh, 668 F.2d at 331. In Heirens we overruled Welsh because "we determined from an examination of parole practice in Illinois that general deterrence had in fact been a valid consideration by the Parole Board even before the statutory revision which made this consideration one for explicit examination." Prater, at 1234 (citing Heirens, 729 F.2d at 460). In Prater this court held that the district court was incorrect in holding as a matter of law that Prater could not have been disadvantaged by the introduction of a general deterrence criterion into the Parole Commission and Reorganization Act of 1976 and the 1973 Guidelines adopted by the Federal Parole Board. This court remanded for a factual determination of the "actual practice of the board before and after the change" to see whether an actual change, and a disadvantageous one, had occurred. Prater, at 1236.
 
 
 26
 This case, however, does not involve the general deterrence criterion, but is, more simply, a guidelines case. See Prater, at 1234. Nowhere in their Notice of Action order of July 14, 1983 do the parole examiners make reference to general deterrence as a reason for denying petitioner his parole. The examiners restricted their reasons for denying parole to the parole guidelines, acknowledging that they have considered "other information as presented." Petitioner admits in his brief that the Commission "found neither that [petitioner's] release would depreciate the seriousness of his offense nor jeopardize the public welfare ... [but] merely cited the Guidelines." Pet. br. at 38. This case, therefore, does not follow Welsh, Heirens, or Prater.
 
 III
 
 27
 Petitioner argues that he was denied due process and equal protection through the joint interaction of 18 U.S.C. Sec. 4208(a) (1976), 28 C.F.R. Sec. 2.12, and 41 Fed.Reg. 37317 Sec. (B)(4)(d) (Oct. 4, 1976). Federal regulations provide that:
 
 
 28
 a. An initial hearing shall be conducted within 120 days of a prisoner's arrival at a federal institution or as soon thereafter as practicable, except that in the case of a prisoner with a minimum term of parole ineligibility of ten years or more, the initial hearing shall be conducted at least 30 days prior to the completion of such minimum term, or as soon thereafter as practicable.
 
 
 29
 28 C.F.R. Sec. 2.12.
 
 
 30
 Pursuant to 28 C.F.R. Sec. 2.12, petitioner, a member of the class of prisoners with a minimum term of parole eligibility of ten years or more, was given an initial parole hearing after 119 months of imprisonment. Petitioner argues, however, that there is "no rational basis" why inmates with different sentences should receive different initial hearing dates. Pet. Br. at 39. Petitioner argues that he was "denied the opportunity for a meaningful parole hearing within 120 days after his arrival at an institution." Id. Petitioner claims that a hearing at 120 days would have protected his constitutional rights of equal protection and due process because 120 days after his incarceration the 1973 Guidelines would have been applied to him, and, pursuant to 41 Fed.Reg. 37317 Sec. (B)(4)(d), they would have continued to have been applied to him throughout his incarceration.
 
 
 31
 Petitioner does not allege that he is a member of any protected class recognized under equal protection case law. Therefore, to sustain an equal protection challenge to section 2.12, petitioner must show that the legislature, through their delegate, the Commission, had no rational basis for establishing a discrepancy in the timing of initial parole hearings. Petitioner has not attempted to prove this, and we do not think that he can. It is rational for the Commission to set a 120 day initial hearing date for shorter sentences, such as those of less than ten years, and to tie all other initial hearing dates for prisoners with longer sentences to the minimum date of the sentence itself. To require a hearing for all prisoners after 120 days requires excessive and unnecessary work; some prisoners may have life sentences or other similarly lengthy terms which make initial parole determinations practically irrelevant to the real date of their eventual release. On the other hand, a 120 day hearing date for all sentences less than ten years is an efficient system: special hearing dates for all short sentences do not need to be calculated, making it more likely therefore that prisoners will receive timely initial hearings. Finally, initial parole hearings suggests a possibility of parole; it is rational to provide prisoners with short sentences with an incentive to achieve parole as early as possible. It also seems rational not to discuss the distant future with prisoners whose crimes were so serious that much longer sentences were imposed upon them. Thus, finding that section 2.12 has a rational basis, we reject petitioner's equal protection challenge.
 
 
 32
 Petitioner's claim of a violation of due process also fails. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). Nor does an inmate "have a protectible expectation of parole by virtue of the mere existence of a parole system." Solomon v. Elsea, 676 F.2d 282, 284 (7th Cir.1982). A federal parole statute may create a liberty interest in the "expectation of release on parole," but this test must be made on a "case by case basis." Id. Section 2.12 provides no "expectancy interest" on which prisoner can hang his hat; in fact it promises him only what it in fact delivered: an initial parole hearing based on his minimum term. We cannot find any violation of due process in the treatment of petitioner afforded to him by the Commission.
 
 
 33
 In conclusion, therefore, and for all of the reasons stated above, we affirm the district court's dismissal of petitioner's petition for a writ of habeas corpus.
 
 
 34
 AFFIRMED.
 
 CUDAHY, Circuit Judge, concurring:
 
 35
 I join in the result and in the essentials of the majority's reasoning. I write separately only to emphasize some of the factors which, I believe, bear on the result. These are points certainly to be found in the majority opinion, but which may not receive there the emphasis I believe they deserve.
 
 
 36
 I begin by pointing out that Prater v. United States Parole Commission, 764 F.2d 1230 (7th Cir.1985); Heirens v. Mizell, 729 F.2d 449 (7th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984); and Welsh v. Mizell, 668 F.2d 328 (7th Cir.), cert. denied, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), all involved a change in a statute. Thus, there was no doubt in those cases that we were dealing with "laws". We were faced with the question of determining whether the change in the "law" imposed a disadvantage on the prospective parolee. In Heirens we determined that it was a matter of fact whether the changes imposed by the new law were worse, from the prisoner's point of view, than the prior practice. Here, however, we are faced with a logically prior question. We must determine whether the new guidelines are "laws". It is only if the new guidelines are "laws" that we must engage in the inquiry into disadvantage necessitated by the ex post facto clause.
 
 
 37
 As the majority notes, administrative agencies can take actions (including adopting rules and "guidelines") which involve laws for purposes of ex post facto analysis. Rodriguez v. United States Parole Commission, 594 F.2d 170, 173-74 (7th Cir.1979). In Rodriguez the Parole Commission adopted, pursuant to its rulemaking power under 18 U.S.C. Sec. 4203(a)(1), a regulation which set the minimum time between parole review hearings (absent extraordinary circumstances) at eighteen months. At the same time the regulation eliminated the hearing formerly held at the one-third point of sentence. Although the requirement of an initial hearing at 120 days was retained, few prisoners are able to show institutional adjustment and rehabilitation this early. Consequently, this change effectively denied parole to offenders who had been sentenced to short terms such as two years. We found that the rule was "tantamount to a statute for the purpose of determining whether its application to Rodriguez runs afoul of the ex post facto clause." Rodriguez, 594 F.2d at 174 (citing Davis, Administrative Law of the Seventies Sec. 5.03 at 147 (1976), for the distinction between "legislative" and other sorts of agency rules).
 
 
 38
 Because this change operated to the substantial disadvantage of Rodriguez, we held that application of the new rule to Rodriguez violated the ex post facto clause. Insofar as Rodriguez suggests that all rules promulgated under the Commission's rulemaking authority have the force and effect of law, and are therefore subject to the ex post facto clause, it appears to be inconsistent with Zeidman v. United States Parole Commission, 593 F.2d 806 (7th Cir.1979), a case much like that now before us, which was decided by this court the same day as Rodriguez. In Zeidman we considered the claim that application of changed parole release guidelines violated the ex post facto clause. In Zeidman's own case the recommended period of incarceration increased from 12-16 months to 20-26 months. Although we did not note the fact in our decision, the new guidelines there involved had been promulgated by the Commission under the same statutory rulemaking authority as those involved in Rodriguez, and involved the same notice and comment procedures. Compare 41 Fed.Reg. 19341, 19326, 22344 (May 12, June 3, 1976) (proposing and adopting temporarily on emergency basis guidelines applicable in Zeidman) with 42 Fed.Reg. 31784 (June 23, 1977) (adopting rule at issue in Rodriguez). In Zeidman we found that the guidelines did not have the force and effect of law (and hence the ex post facto clause was not implicated). But cf. Rodriguez, 594 F.2d at 176 n. 9 (stating this issue not reached in Zeidman). This was so for two reasons: first, the guidelines were intended as guideposts to assist the parole commission in the exercise of its discretion, which it still retained. That is, they were not fixed and rigid, but rather were flexible. Second, the record indicated that Zeidman received individualized consideration from the Parole Commission. Therefore, we reasoned, there was no basis for concluding that the new guidelines violated the ex post facto clause in that case.
 
 
 39
 The guidelines the application of which is challenged in this case (codified at 28 C.F.R. Sec. 2.20 (1984)) were adopted pursuant to the same rulemaking authority as those in Zeidman and Rodriguez. See 47 Fed.Reg. 56334 (Dec. 16, 1982). Like those involved in Zeidman, the Commission purports to retain a large measure of its discretion, although admittedly that discretion is channeled by the refinements in the guidelines. Further, a consideration of the record in this case persuades me that Inglese received individualized consideration from the Parole Commission. Therefore, the guidelines as applied in this case do not, under the weight of authority, violate the ex post facto clause.
 
 
 40
 Perhaps there is some circularity to the analysis which has been widely applied in this area. Guidelines are not "laws" subject to the ex post facto clause because we cannot rely on them. And we cannot rely on them because they are not "laws" subject to the ex post facto clause. But I think there is some difference from a reliance point of view between mandatory prescriptions and agency statements of policy intended to channel the exercise of discretion by administrators. At least, a majority of the courts of appeals which have considered the question have refused to extend ex post facto analysis to parole guidelines and the Supreme Court has declined as yet to consider the question, see United States Parole Commission v. Geraghty, 445 U.S. 388, 390 n. 1 & 408, 100 S.Ct. 1202, 1205 n. 1, & 1214, 63 L.Ed.2d 479 (1980).