**Ahssem RIFAI, Petitioner-Appellant,**

v.

**UNITED STATES PAROLE COMMISSION and Warden, United States Penitentiary, McNeil Island, Washington, Respondents-Appellees.**

No. 78–1859.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1978.

Stephen K. Strong (argued), of Bendich, Stobaugh & Strong, Seattle, Wash., for petitioner-appellant.

William H. Rubidge, Asst. U. S. Atty. (argued), Seattle, Wash., for respondents-appellees.

Before VAN DUSEN,* WRIGHT and GOODWIN, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Rifai petitioned for a writ of habeas corpus challenging the denial of his release on parole by the United States Parole Commission (Commission).[1] He asserted that the Commission's use of new parole release guidelines and statutory standards in making his parole decision violated the prohibition of *ex post facto* laws. The district court denied his petition and he raises the same issues on appeal. We affirm.

## I.

### FACTS

Rifai was convicted in 1972 for importing and possessing heroin and sentenced to ten years. He attempted to influence a witness in a motion for a new trial, and was convicted in 1974 for conspiracy to suborn perjury and obstruction of justice. For this second conviction, he was sentenced to two concurrent five-year terms to run consecutively to the ten-year sentence.

At the time Rifai was sentenced on both convictions, the Commission determined whether to release a prisoner on parole under the following statutory standards:

> If it appears to the [Commission] . . . that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the [Commission] such release is not incompatible with the welfare of society, the [Commission] may in its

---

* Senior Circuit Judge for the Third Circuit.

1. For uniformity, the Parole Commission will be referred to throughout as the Commission, although prior to the Parole Commission and

Reorganization Act of 1976, Pub.L. No. 94–233, § 4201, 90 Stat. 219 (codified at 18 U.S.C.A. § 4201 (Supp.1978)), it was known as the Parole Board.

discretion authorize the release of such prisoner on parole.

18 U.S.C. § 4203(a) (1970) (repealed 1976). Prior to 1973, although the Commission considered several other factors within this broad grant of discretion, it emphasized institutional performance as the primary criterion in determining parole release. The Commission does not dispute here that, with one exception, Rifai's institutional behavior was exemplary.

Pursuant to § 4203(a), however, the Commission adopted guidelines in 1973 which changed the emphasis on the criteria considered in determining parole release. Under the new guidelines which rank offenses according to their severity and recommend corresponding periods of incarceration, the Commission emphasizes offense severity.

In June 1976, Congress enacted the Parole Commission and Reorganization Act of 1976, Pub.L. No. 94–233, 90 Stat. 219 (codified at 18 U.S.C.A. § 4201, *et seq.* (Supp. 1978)) (Parole Commission Act), which, *inter alia*, repealed § 4203(a) and rephrased the statutory standards for parole release determinations. Pursuant to 18 U.S.C.A. § 4206 (West Supp.1978), the new standards are:

> If an eligible prisoner has substantially observed the rules of the institution . . . to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;

**2.** The guidelines promulgated pursuant to § 4206(a) of the Parole Commission Act are substantially the same as those promulgated in 1973. See 28 C.F.R. § 2.20 (1977) for current guidelines.

**3.** The *ex post facto* concept has been more broadly expressed as follows:

> [A]ny law passed after the commission of an offense, which, . . . [i]n relation to that offense, or its consequences, alters the situation of a party to his disadvantage, is an *ex post facto* law . . . . .

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission . . . such prisoner shall be released.

The Act, in essence, adopted the approach of the Commission's 1973 guidelines in emphasizing offense severity, instead of institutional behavior, for parole release determinations.[2]

The parole hearing in question here was held in December 1976. Rifai claims that the use of, first, the 1973 guidelines and, second, the 1976 statutory standards in his parole release determination violated the *ex post facto* prohibition. He contends that, despite his exemplary institutional behavior that might have qualified him for parole prior to 1973, the Commission denied parole because it evaluated his opportunity for parole release under the new guidelines and statutory standards emphasizing offense severity.

## II.

### DISCUSSION

The Supreme Court early concluded that "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" constitutes an *ex post facto* violation. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).[3] With this in mind, we analyze Rifai's *ex post facto* claims.

### A. THE 1973 COMMISSION GUIDELINES.

██ Rifai uses two arguments in contending that the guidelines are "laws" for

*Kring v. Missouri,* 107 U.S. 221, 235, 2 S.Ct. 443, 455, 27 L.Ed. 506 (1883) (citation omitted).

> The test for *ex post facto* laws also has been described as
>
> not whether the punishment actually received is within the outer limits of the law at the time the crime was committed, but whether "the later standard of punishment is more onerous than the earlier." *Lindsey v. Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182 (1937).

*Geraghty v. United States Parole Commission,* 579 F.2d 238, 264 (3rd Cir. 1978).

purposes of the *ex post facto* prohibition. First, he asserts that because the guidelines are followed with regularity,[4] they have the force and effect of law. We reject this argument. Under this theory, any policy or practice followed with some frequency would constitute a "law" from which an agency could not vary.

Second, he argues that this court's holding in *Love v. Fitzharris*, 460 F.2d 382 (9th Cir. 1972), *vacated as moot*, 409 U.S. 1100, 93 S.Ct. 893, 34 L.Ed.2d 682 (1973), mandates that the guidelines be treated as law. In *Love*, a California agency interpreted the state's parole eligibility statutes and decided that, when consecutive sentences were imposed, California Penal Code § 3049 applied and a prisoner could be paroled after the expiration of one-third of his minimum sentence. The agency later reinterpreted the statutes and concluded that narcotics offenders would be eligible for parole only after serving two and one-half years on each consecutive sentence. We held that this change in the agency interpretation of parole eligibility statutes had the force and effect of law and violated the prohibition of *ex post facto* laws.

In *Love* we distinguished the case of *In re Costello*, 262 F.2d 214 (9th Cir. 1958). In *Costello*, the Adult Authority, after initially fixing defendant's term of imprisonment under the California indeterminate sentence law, later increased the term upon cause shown. We held that the agency action was "within the authority well established by court decisions" which permitted the increase in term. In contrast, *Love* involved

a situation where the agency "changed its interpretation of the authority itself." *Love*, 460 F.2d at 385.

 This case is more closely analogous to *Costello* than *Love*. The Commission here was well within established statutory authority when it promulgated the guidelines. *See, e. g., Wiley v. Board of Parole*, 380 F.Supp. 1194 (M.D.Pa.1974); *Battle v. Norton*, 365 F.Supp. 925 (D.Conn.1973) (upholding the guidelines against ultra vires challenges under the pre-1976 statutory standards). The broad standards enunciated by Congress gave the Commission great discretion, and changes in the emphasis or de-emphasis of parole release considerations within the statutory scheme were clearly authorized. The guidelines, therefore, are merely procedural guideposts,[5] without the characteristics of laws. *See Ruip v. United States*, 555 F.2d 1331 (6th Cir. 1977) (the 1973 guidelines are not laws).[6]

## B. THE 1976 STATUTORY CHANGES.

Rifai argues that the 1976 statutory standards changed the law governing parole release determinations to his detriment, causing him to serve a longer sentence than he would have under the pre-1976 standards.

 We conclude, however, that the 1976 standards did not change the law governing parole release decisions. In enacting the Parole Commission Act, Congress recognized that "[t]he standards for release on parole . . . are not significantly

---

4. The Commission reported in March 1974 that 89% to 94% of its decisions were within the guidelines. There is some indication that this compliance level is dropping. In 1975, the Commission's data indicated that 81% to 89% of its decisions were within the guidelines. If all cases outside the guidelines by virtue of sentencing decisions are excluded from the figures, 77% to 85% of the decisions were in the guidelines range. J. Newman, "Parole Release Decisionmaking and the Sentencing Process," 84 *Yale L.J.* 810, 869 n.293 (1975).

5. That the guidelines were more than procedural guideposts for purposes of determining the applicability of the Administrative Procedure Act, *see Pickus v. U. S. Board of Parole*, 165

U.S.App.D.C. 284, 507 F.2d 1107 (1974), does not elevate them to the status of "law" within the meaning of the *ex post facto* clause. Because the guidelines are not binding on the agency, they cannot be treated as laws although they may be required to be promulgated or modified with procedural regularity.

6. *But see Geraghty v. United States Parole Commission*, 579 F.2d 238, 267 (3d Cir. 1978) (whether the guidelines are followed in the great majority of cases or are procedural guideposts whose application may be negatived by particular circumstances in a case is an issue of fact, the resolution of which is inappropriate on motion for summary judgment.).

changed from existing law." Sen.Rep. No. 94–369, 94th Cong., 2d Sess. (1976), *reprinted in* 2 [1976] U.S.Code Cong. & Admin. News, pp. 335, 339.

 At most, the 1976 standards may have announced an emphasis on certain parole release considerations, but they did not abridge the Commission's authority to emphasize others within its discretion. The Commission's scope of authority remains broad and its discretion, with respect to the issues raised here, is not limited by the statutory changes or the guidelines promulgated thereunder.[7]

Rifai's exemplary institutional performance is not contested. Even under the pre-1976 standards, however, he had no guarantee that he would be paroled after a given number of years of good performance. Under the pre-1976 standards the Commission could have denied parole for the same reasons it was denied in December 1976. He has not convinced us that he suffered greater punishment under the 1976 standards than he would have received under the pre-1976 scheme.

Rifai's reliance on *De Paralta v. Garrison*, 575 F.2d 749 (9th Cir. 1978), is misplaced. That case involved the application of the offense severity factor to prisoners sentenced under the Youth Corrections Act, 18 U.S.C. § 5001, *et seq.* (1970). Offense severity was a factor excluded under the Youth Corrections Act until its amendment in 1976 by the Parole Commission Act. *Shepard v. Taylor*, 556 F.2d 648, 652–53 (2d Cir. 1977). The retroactive application of this *new* criterion was prohibited in *De Paralta.* Conversely, offense severity has never been excluded as a consideration for parole release determinations for adult offenders.

Because Rifai fails to show that the guidelines are laws within the *ex post facto* prohibition or that the statutory standards "inflict greater punishment than the law

annexed to the crime, when committed," we reject his *ex post facto* claim. The district court correctly denied his petition.

AFFIRMED.

---

7. The Commission is not restricted to making parole determinations within the guidelines. If there is "good cause" for doing so, it may go outside the guidelines. 18 U.S.C.A. § 4206(c) (Supp.1978).

Such was the case here. Although the guidelines recommended a range of 26–36 months imprisonment for his offense and Rifai had served 44 months, the Commission elected to go outside the guidelines and keep him in custody.