764 F.2d 143
 Vincent DiNAPOLI, Petitioner-Appellant,
v.
NORTHEAST REGIONAL PAROLE COMMISSION, United States Parole
Commission, Dennis Luther, Warden, Federal Correctional
Institution, Danbury, Connecticut, and William French Smith,
Attorney General, Department of Justice, Respondents-Appellees.
 No. 1264, Docket 85-2054.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1985.
Decided June 13, 1985.
 
 Charles Haydon, New York City (Dublirer, Haydon, Straci & Victor, New York City, of counsel), for petitioner-appellant.
 Barry K. Stevens, Asst. U.S. Atty., D. Conn., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., of counsel), for respondents-appellees.
 Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and PIERCE, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 Vincent DiNapoli appeals from an order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, Chief Judge, denying his petition for a writ of habeas corpus. DiNapoli is currently serving a five-year term of imprisonment, entered in the United States District Court for the Eastern District of New York after his plea of guilty to one count of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962(c). DiNapoli offers two grounds for granting the writ. First, he claims that the United States Parole Commission violated the Constitution's prohibition against ex post facto laws, U.S. Const. art. I, Sec. 9, cl. 3, by applying parole guidelines that were not in effect at the time of his offense, plea agreement or sentencing. Second, he contends that his plea agreement was violated by the Parole Commission's consideration of certain information in determining how much time he should serve before release. For the reasons stated below, we affirm the judgment of the district court.
 
 I.
 
 2
 In pleading guilty to engaging in a "pattern of racketeering activity" in violation of RICO, DiNapoli had to, and did, admit to committing two predicate offenses, 18 U.S.C. Sec. 1961(5). The first offense involved actual receipt of approximately $33,000 in return for a promise of "labor peace" at a particular construction site. The second involved an attempt to extort approximately $100,000 in connection with another construction project. The plea agreement entered into by appellant and the government was not reduced to writing. As stated by appellant's counsel at the entry of the plea, the relevant portion of the agreement is as follows:
 
 
 3
 Mr. DiNapoli voluntarily said, proposed, authorized to offer that he will return the $33,000 which was involved, to the Government and that the Government in turn is not going to claim in their communications to the Parole Commission as to the part which deals with the amount involved and it will not claim an amount in excess of $33,000, which Mr. DiNapoli has voluntarily agreed to return.
 
 
 4
 DiNapoli pled guilty on April 16, 1982 and was sentenced on July 19. Apparently due to illness, he did not begin serving his sentence until March 2, 1983. He received his initial parole hearing before an examiner panel of the Parole Commission on August 23, 1983. In a Notice of Action dated September 20, 1983, the Commission concluded that under its existing regulations, 28 C.F.R. Sec. 2.10 et seq. (1983) (1983 Guidelines), DiNapoli had an "offense severity rating" of Category Five, id. Sec. 2.20, which, when combined with his "salient factor score" of six, indicated a range of incarceration of 36 to 48 months before parole. Id.; see Roth v. United States Parole Comm'n, 724 F.2d 836, 837-38 (9th Cir.1984) (describing operation of Parole Commission). The Commission further concluded that a decision outside the guidelines was not warranted.
 
 
 5
 In a Notice of Action on Appeal dated March 22, 1984, the National Appeals Board of the Parole Commission affirmed the Commission's earlier decision, stating that "[t]he Commission has maintained the position that the guidelines in effect at the time of the initial hearing are to be utilized." Applying those guidelines, the Board concluded that "[y]our offense severity rating has been correctly rated as Category Five because, as you state, you were convicted under the RICO statute." The Board then went on to note that even under the earlier guidelines "your offense still would have been rated as at least Category Five because it involved receipt or attempted receipt of monies for labor peace exceeding $100,000." Finally, after affirming the calculation of DiNapoli's "salient factor score," the Board stated that "in view of the seriousness of your offense, a more lenient decision [than the indicated 36 to 48 months] is not warranted."
 
 
 6
 DiNapoli brought this habeas corpus action in the United States District Court for the Eastern District of Pennsylvania, which then transferred the case to the District of Connecticut, the district in which DiNapoli is confined. In an order dated January 25, 1985, Chief Judge T.F. Gilroy Daly denied the petition "[f]or the reasons stated in the government's response." This appeal followed.
 
 II.
 
 7
 The ex post facto clause, U.S. Const. art. I, Sec. 9, cl. 3, forbids the Congress from passing any law " 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1867)). The clause serves both to assure that legislative acts give fair warning about new punishments and to discourage arbitrary and oppressive legislation. Weaver, supra, 450 U.S. at 28-29, 101 S.Ct. at 963-64. In accord with these purposes, the Supreme Court has identified
 
 
 8
 two critical elements [that] must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.
 
 
 9
 Id. at 29, 101 S.Ct. at 964 (footnotes omitted).
 
 
 10
 Appellant contends that the Parole Commission violated the Constitution's prohibition against ex post facto laws by applying the 1983 Guidelines, which were in effect at the time of his parole hearing, rather than the guidelines in force at the time of his offense, plea bargain and sentencing (the 1979 Guidelines). He argues as follows. In setting appellant's offense severity rating at five, and hence his indicated time of incarceration at 36 to 48 months, the Commission relied on the special category for RICO offenses in the 1983 Guidelines, 28 C.F.R. Sec. 2.20, ch. 11, subch. A, Sec. 1101 (1983), a category not contained in the 1979 Guidelines. Had those earlier guidelines been applied, and had the Parole Commission not considered the $100,000 offense (as appellant claims the plea agreement bound them not to), he would have received a lower offense severity rating and an indicated time of incarceration of only 20 to 26 months. Appellant concludes that application of the 1983 Guidelines in this case violates the ex post facto clause because it " 'makes more burdensome the punishment for a crime, after its commission.' " Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (quotingBeazell v. Ohio, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).
 
 
 11
 The government does not dispute that the Commission retrospectively applied the 1983 Guidelines in that it applied them to an offense committed before they had become effective. And for the purposes of this petition, despite the government's claim to the contrary, we accept appellant's contention that had the 1979 Guidelines been applied, and had the Commission not considered the $100,000 offense, he would have received an earlier indicated parole date. Nevertheless, because under this court's precedents the federal parole guidelines applied to appellant are not "laws" within the meaning of the ex post facto clause, Priore v. Nelson, 626 F.2d 211, 217 (2d Cir.1980); Shepard v. Taylor, 556 F.2d 648, 654 (2d Cir.1977) (dictum), appellant's claim is without merit. In both Priore and Shepard we cited with approval the Sixth Circuit's opinion in Ruip v. United States, 555 F.2d 1331 (6th Cir.1977), which states:
 
 
 12
 These guidelines are not law, but guideposts which assist the Parole Commission ... in exercising its discretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines.
 
 
 13
 555 F.2d at 1335. See also Zeidman v. United States Parole Comm'n, 593 F.2d 806, 808 (7th Cir.1979); Rifai v. United States Parole Comm'n, 586 F.2d 695, 698 (9th Cir.1978); Richards v. Crawford, 437 F.Supp. 453, 456 (D.Conn.1977) (Newman, J.).
 
 
 14
 Appellant relies on the Supreme Court's 1981 decision in Weaver v. Graham, supra, for the proposition that Priore, Shepard and the other cases cited above are no longer good law. This reliance is misplaced. Weaver involved repeal of a state statute mandating certain nondiscriminatory, automatically calculated deductions from a prisoner's sentence as "gain time" for good conduct, and passage of a similar statute providing for smaller "gain time" deductions. 450 U.S. at 26-27, 101 S.Ct. at 962-963. A prisoner whose offense and sentencing predated the new law claimed that application of that law to him violated the Constitution's prohibition against ex post facto laws. The Supreme Court agreed, stating that as applied the new law "makes more onerous the punishment for crimes committed before its enactment." Id. at 36, 101 S.Ct. at 968. Because there was no discretion in awarding the mandated gain time, the change in the formula by which that time was calculated automatically lengthened the term of incarceration for prisoners who obeyed the institutional rules. 450 U.S. at 34-36, 101 S.Ct. at 967-968.
 
 
 15
 Weaver is not controlling here. DiNapoli challenges guidelines promulgated to guide an agency's discretion, not a statute granting a mandatory entitlement to gain time. Under both the 1979 and 1983 versions of the Parole Commission's guidelines, the Commission remains free to recommend a parole date either above or below the guidelines, "if it determines there is good cause for so doing." 18 U.S.C. Sec. 4206(c). In addition, the Commission has explicitly retained, in its regulations, the discretion to revise or modify the guidelines at any time as deemed appropriate. 28 C.F.R. Sec. 2.20(g) (provision contained in both the 1979 and 1983 Guidelines).
 
 
 16
 The weight of post-Weaver authority supports this view. See Dufresne v. Baer, 744 F.2d 1543, 1548-50 (11th Cir.1984); Paschal v. Wainwright, 738 F.2d 1173, 1180-81 (11th Cir.1984); Roth v. United States Parole Comm'n, 724 F.2d 836, 840 (9th Cir.1984); Prater v. United States Parole Comm'n, 575 F.Supp. 284, 286-87 (S.D.Ind.1983); Benedict v. United States Parole Comm'n, 569 F.Supp. 438 (E.D.Mich.1983). It is true that the Third Circuit held to the contrary in United States ex rel. Forman v. McCall, 709 F.2d 852 (3d Cir.1983), which relied on that court's earlier decision in Geraghty v. United States Parole Comm'n, 579 F.2d 238 (3d Cir.1978), vacated on other grounds, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). As one court recently noted, however, the reasoning of Geraghty, and in turn of Forman, "has been expressly or implicitly rejected by every other Circuit Court of Appeals that has assessed the ex post facto effect of the U.S. Parole Commission guidelines in adult cases, and a number of state courts deciding similar issues." Paschal v. Wainwright, supra, 738 F.2d at 1181 n. 12 (citing cases). Even if we agree that "[u]nbounded discretion probably does not exist in the Commission's decisionmaking," Forman, supra, 709 F.2d at 861, and that "changes in the guidelines appear to shape the exercise of that discretion," id., the Commission does retain substantial discretion to go above or below the guidelines, Bialkin v. Baer, 719 F.2d 590, 594-95 (2d Cir.1983). Accordingly, we adhere to our view that federal parole guidelines as applied here are not "laws" within the meaning of the ex post facto clause and affirm the denial of appellant's ex post facto claim.
 
 III.
 
 17
 Appellant claims, in effect, that in the plea agreement the government bound the Parole Commission not to consider the $100,000 offense in setting appellant's presumptive release date. For its part, the government contends that the agreement only bars the prosecutor from communicating the challenged information to the Parole Commission, and that no such communication was made. Having concluded that application of the 1983 Guidelines was permissible, however, we need not resolve this dispute over the meaning of the plea agreement because appellant's claim for relief turns on application of the 1979 Guidelines. Under the 1979 Guidelines, which contain no special provision for RICO offenses, had the Commission considered only the $33,000 offense appellant would presumptively have received a lower offense severity rating and hence a guideline range of 20 to 26 months. Under the 1983 Guidelines, however, the dollar amount of appellant's offense had no effect on the calculation of the guideline range.
 
 
 18
 In its final Notice of Action on Appeal, the Commission, taking the position that the 1983 Guidelines apply, concluded that "[y]our offense severity has been correctly rated as Category Five because, as you state, you were convicted under the RICO statute." This conclusion was reached without reference to the $100,000 offense; a RICO violation under the 1983 Guidelines warrants an offense severity rating of at least five, regardless of the amount of money involved, 28 C.F.R. Sec. 2.20, ch. 11, subch. A, Sec. 1101 (1983). Apparently in response to appellant's claim that application of the 1983 Guidelines would be unconstitutional, the Commission did go on to note that even under the 1979 Guidelines "your offense still would have been rated as at least Category Five because it involved receipt or attempted receipt of monies for labor peace exceeding $100,000." Since we have concluded that application of the 1983 Guidelines was permissible, this reference to the $100,000 offense is immaterial and did not work to appellant's detriment. We are convinced that had the Commission never learned of that offense appellant still would have received an indicated length of service of 36 to 48 months. Accordingly, appellant's claim that the government breached the plea agreement is to no avail.
 
 
 19
 The judgment of the district court is affirmed.